UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

**SHANA MANGOLD** and

**KRISTOPHER MANGOLD**

    Plaintiffs,

v.

**CAVALRY SPV I, LLC**,

<u>Serve at</u>:
    Reg. Agt. - C. T. Corporation System
    Service Company
    120 South Central Ave
    Clayton, Missouri, 63105

**WILLIAM MARTIN**,

<u>Serve at</u>:
    Center Police Department
    103 S. Public Street
    Center, MO 63436

**CITY OF CENTER, MO**,

<u>Serve at</u>:
    City of Center
    103 S. Public Street
    P.O. Box 147
    Center, MO 63436

    Defendants.

Case No. 4:21-cv-1063

**JURY TRIAL DEMANDED**

## COMPLAINT FOR FAIR DEBT COLLECTIONS PRACTICES ACT VIOLATIONS, TRESPASS, and 42 U.S.C. § 1983 VIOLATIONS

*"You're going to piss me off.  Don't make me come back with my badge and pistol.... I really don't think you want to aggravate me, I'll make it my mission in life."*

-Chief of Police William Martin to Kris & Shana Mangold while trying to collect a credit card debt.

COMES NOW Plaintiff Shana Mangold and Kristopher Mangold ("Plaintiffs"), by and through their undersigned counsel, and state for their Complaint against Defendants Cavalry SPV I, LLC, William Martin, and the City of Center, MO ("Defendants") the facts set forth below. Plaintiffs demand a jury trial on all causes of action against Defendants.

## INTRODUCTION

1. Defendants engaged in an old-fashioned door-pounding, gunplay-threatening debtor shakedown that was made illegal over forty years ago by the Fair Debt Collection Practices Act. Center, Missouri is a sleepy little town. Center's Chief of Police is William Martin. Chief Martin does not like the idea of an unpaid debt threatening the peace and tranquility of bucolic Center, Missouri. Chief Martin willingly, even gleefully, helped Cavalry collect an old credit card debt in "Roscoe P. Coltrane" fashion from Shana Mangold by using grossly excessive force, threats of gunplay, and intimidation on behalf of Defendant Cavalry.

2. This is an action for actual and statutory damages against Defendant Cavalry SPV I, LLC ("Defendant Cavalry") brought to the Court by individual consumers for violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 et. seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

3. This is also a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking damages against Defendants William Martin ("Defendant Martin") and the City of Center, MO ("Defendant City") for violations of Plaintiffs' rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

4. This is also a trespass action brought under Missouri law against all Defendants. Plaintiffs demand punitive damages because the trespass was willful, intentional, and malicious.

## THE PARTIES

5. Plaintiff Shana Mangold and Plaintiff Kristopher Mangold are natural persons currently residing in Missouri. Plaintiffs are "consumers" within the meaning of the FDCPA. Plaintiffs are a married couple.

6. The alleged debt Plaintiff Shana Mangold owes arises out of consumer, family, and household transactions.

7. Plaintiff Shana Mangold has a bona-fide dispute of the debt. The balance alleged of $14,373.95 is not accurate to the best of Plaintiff Shana Mangold's understanding as it far overstates any amount that could be due or owing to Defendant Cavalry. Plaintiff Shana Mangold also disputes that Cavalry has, or could ever have, sufficient documentation and witness testimony to support and prove the amount of alleged indebtedness in a court of law. Plaintiff Kris Mangold disputes that he owes Cavalry anything at all.

8. Defendant Cavalry is a foreign limited liability company with its principal place of business located outside the State of Missouri.

9. The principal business purpose of Defendant Cavalry is the collection of debts nationwide; Defendant Cavalry regularly attempts to collect debts alleged to be due to another entity.

10. Defendant Cavalry is engaged in the collection of debts from consumers through means of using mail and telephone. Defendant Cavalry is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

11. Defendant City of Center, MO ("Defendant City") is a body politic, organized and existing pursuant to Missouri law.

12. Defendant William Martin ("Defendant Martin") was, at all times relevant hereto, a Missouri certified and sworn police officer, an employee of Defendant City and the denominated Chief of Police, and acting under color of state law. Defendant Martin is named as a party to this litigation in his individual and official capacity.

## JURISDICTION AND VENUE

13. This Court has original subject matter jurisdiction over this controversy pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1343, 1692k(d) and 1367 because Plaintiffs' claims arise under the FDCPA and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiffs' state law claim because it arises out of the same facts and circumstances as the FDCPA and Section 1983 claims. As such, the state law claim is joined with and substantially related to both federal claims.

14. Defendants are all subject to personal jurisdiction because Defendant Martin resides in Missouri, Defendant City is in Missouri, and Defendant Cavalry has sufficient minimum contacts with the state of Missouri. In addition, Defendants jointly committed the tortious and illegal acts referenced herein in Missouri, and Plaintiffs suffered the harms from Defendants acts in Missouri.

15. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL COUNTS AND CAUSES OF ACTION

16. Defendant Cavalry's collection activity, of which Plaintiffs dispute, occurred within the previous twelve (12) months.

17. On May 17, 2021, David Page on behalf of Defendant Cavalry filed suit against Plaintiff Shana Mangold in the Circuit Court of Ralls County in case number 21RL-CV00133.

18. Upon information and belief, Defendant Cavalry instructed David Page to obtain a consent judgment on Plaintiff Shana Mangold by any means necessary including intimidation. In the alternative, Cavalry knew of and approved everything Page did to collect the alleged debt.

19. At all times relevant, Defendant Cavalry consented to David Page acting on Cavalry's behalf. At all times relevant, David Page was subject to Cavalry's control.

20. At all times relevant, David Page was Defendant Cavalry's authorized agent.

21. On June 23, 2021, Special Process Server Eddie Bogue was appointed by the Court at Cavalry's request, made via Page, to effect service on Plaintiff Shana Mangold.

22. Upon information and belief, David Page instructed Eddie Bogue to obtain a consent judgment on Plaintiff Shana Mangold by any means necessary including intimidation. In the alternative, Page knew about everything Bogue and Defendant Martin did to collect the debt and approved of and consented to the same.

23. At all times relevant, David Page consented to Eddie Bogue acting on Page's behalf. At all times relevant, Eddie Bogue was subject to David Page's control.

24. At all times relevant, Eddie Bogue was David Page's authorized agent. Therefore, Eddie Bogue was Defendant Cavalry's authorized agent.

25. Prior to July 3, 2021, Defendant Calvary, in a phone call with Plaintiff Shana Mangold, told her that she had to pay the $14,000 debt. Plaintiff Shana Mangold explained that she wanted to see proof that substantiated that amount because she disputed that she could owe that much.

26. Rather than send proof, Defendant Calvary sent her a consent judgment and asked her to sign it. While Plaintiff Shana Mangold had asked Cavalry to accept a payment plan, she was still waiting on proof of the debt amount before she signed the consent judgment.

27. Defendant Cavalry had not sent proof of the debt by July 3, 2021.

28.     On July 3, 2021, Defendant Martin, with the consent of Calvary, decided to accompany Eddie Bogue to Plaintiffs' residence even though Defendant Martin knew he would have no role in serving Plaintiff Shana Mangold with the relevant summons.  Although the circuit court had issued a summons for Plaintiff Shana Mangold, Defendant Martin did not bother to take the summons to Plaintiffs' address because he had no intention of serving Plaintiff Shana Mangold.

29.     At all times relevant, Eddie Bogue consented to Defendant Martin acting on Bogue's behalf. At all times relevant, Defendant Martin was subject to Eddie Bogue's control. Defendant Cavalry, at all times relevant, consented to Bogue and Defendant Martin collecting the debt on Defendant Cavalry's behalf as Defendant Cavalry's agents.

30.     In the alternative, Defendant Martin was Eddie Bogue's apparent agent due to Eddie Bogue's conduct. Eddie Bogue asked Defendant Martin to ride along with him to effect service upon Plaintiff Shana Mangold. Eddie Bogue never made any communication to Plaintiffs that Defendant Martin was not Eddie Bogue's agent.

31.     Therefore, Defendant Martin was either the authorized agent or apparent agent of Eddie Bogue, and therefore, the authorized or apparent agent of Defendant Cavalry.

32.     The same day, Eddie Bogue and Defendant Martin drove to Plaintiffs' residence on a loud ATV while wearing camouflaged hunting outfits.

33.     With Bogue remaining some distance away, Defendant Martin approached Plaintiff's home, opened the screen door, and pounded on the front door so violently that the door frame shook.  This pounding was incessant and took place over a continuous period of time approximately five minutes in length.

34.     Plaintiff Kris Mangold, in the midst of the pounding, peeked out the window and saw an ATV parked in his driveway, which Plaintiff Kris Mangold did not recognize.

35. Defendant Martin continued to pound on the door violently, and shouted "Kris open the door!" This was totally unnecessary, as Plaintiff Kris Mangold did not owe the debt.

36. Plaintiff Kris Mangold opened the door, and saw Eddie Bogue and Defendant Martin, neither of whom Plaintiff Kris Mangold knew.

37. Defendant Martin angrily and mockingly asked, "Do you know who I am?" Plaintiff Kris Mangold replied, "No." Defendant Martin retorted "I'm the Chief of Police. We need to speak with your wife."

38. Plaintiff Kris Mangold asked, "For what?" and Defendant Martin replied "We have papers to serve her." This was untrue, as Defendant Martin was plainly not holding any papers.

39. Defendant Martin was neither the County Sheriff nor was he appointed to serve the summons, so Defendant Martin could not have been at Plaintiffs' residence to serve them. Defendant Martin, on behalf of Defendant Cavalry, was at Plaintiffs' home to harass and intimidate Plaintiffs into paying the bogus debt.

40. Furthermore, if Defendant Martin was actually trying to serve Plaintiff Shana Mangold, he could have done so simply by leaving the summons with Plaintiff Kris Mangold. Defendant Martin refused to serve the summons because the whole point of Defendant Martin's visit was not service of the summons, but intimidation of Plaintiffs to benefit Defendant Cavalry.

41. Plaintiff Kris Mangold, fearful, shut the front door and locked it before taking cover inside his home. Defendant Martin refused to leave.

42. Neither Eddie Bogue nor Defendant Martin were wearing a law enforcement uniform nor was there a law enforcement vehicle present. Neither Eddie Bogue nor Defendant Martin had service papers in their possession when Plaintiff Kris Mangold answered the door.

43. While all this was happening, Plaintiff Shana Mangold was covering in fear with

her 10-year-old daughter in the house.

44. Defendant Martin again started violently pounding on the door calling for Plaintiff Kris Mangold repeatedly.

45. Defendant Martin shouted "You're going to piss me off. Don't make me come back with a badge and pistol." This was a direct threat to Plaintiff Kris Mangold.

46. Defendant Martin continued to pound on the door and next called out for Plaintiff Shana Mangold.

47. Defendant Martin then shouted to both Plaintiffs, "I really don't think you want to aggravate me, I'll make it my mission in life."

48. With no reply, Defendant Martin began violently pounding on the door again.

49. Finally, Eddie Bogue and Defendant Martin left on their ATV.

50. Upon information and belief and based on the foregoing facts, Defendant Martin was never there to effect service upon Plaintiff Shana Mangold. Defendant Martin arrived solely to intimidate and harass Plaintiffs. Defendant Martin intimidated and harassed Plaintiffs to get Plaintiff Shana Mangold to sign a consent judgment in Defendant Cavalry's favor.

51. Defendant Martin then spoke with Plaintiffs' neighbors to gather "statements" to "cover himself" in an effort to portray his assault on Plaintiffs as "not that bad." Upon information and belief, Defendant Martin disclosed to Plaintiffs' neighbors that Plaintiffs had a debt and that Plaintiffs were being sued.

52. Plaintiff Shana Mangold was so unnerved and frightened by this encounter that rather than deal with Defendants any further, she signed the consent judgment in favor of Defendant Cavalry just days later and started making payments on the same.

53. Defendants' above-described conduct has caused Plaintiffs to incur actual damages including but not limited to monetary loss, attorneys' fees paid to counsel, anxiety, frustration, fear, and worry.

### **COUNT I - VIOLATION OF THE FDCPA - DEFENDANT CAVALRY**

54. Plaintiffs re-allege and incorporate by reference all of the above paragraphs.

55. In its attempts to collect the alleged debt from Plaintiffs, Defendant Cavalry by and through its agents at all times relevant has committed violations of the FDCPA, 15 U.S.C. § 1692 et. seq., including, but not limited to, the following:

   a. Intimidating Plaintiffs in an attempt to get Plaintiff Shana Mangold to sign a consent judgment. 15 U.S.C. § 1692f.

   b. Misleading the Plaintiffs by implying that Plaintiff Kris Mangold was a debtor when he was not, and by stating Defendant Martin was at Plaintiffs' residence to serve papers when Defendant Martin had no service papers at all and Defendant Martin's true purpose was to intimidate Plaintiff Shana Mangold into signing the consent judgment. 15 U.S.C. § 1692e.

   c. Harassing and abusing Plaintiffs by repeatedly and violently pounding on their door after Plaintiff Kris Mangold shut the door and made it apparent that Plaintiffs would not speak with Defendants, all in connection with the collector of a debt. 15 U.S.C. § 1692d.

   d. Notifying third-parties of Plaintiff Shana Mangold's debt and disclosing details about that debt to those third parties. 15 U.S.C. § 1692c.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendant Cavalry for:

A.  Judgment that Defendant Cavalry's conduct violated the FDCPA;

B.  Actual damages in an amount to be determined by the jury;

C.  Statutory damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692(k); and

D.  For such other relief as the Court may deem just and proper.

### COUNT II - TRESPASS - ALL DEFENDANTS

56. Plaintiffs re-allege and incorporate by reference all of the above paragraphs.

57. Defendant Martin had no permission, license, or consent from Plaintiffs to enter Plaintiffs' land.

58. At all times relevant, Plaintiffs had a right of possession on the land since Plaintiffs are the owner of the land.

59. Defendant Martin entered the land willfully, intentionally, and with malicious intent to intimidate and harass Plaintiffs.

60. Defendant City employed Defendant Martin and acted through Defendant Martin.

61. Defendant Cavalry by and through its agent Defendant Martin trespassed on Plaintiffs' land.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants for actual and punitive damages and for such other relief as the Court may deem just and proper.

### COUNT III - 42 U.S.C. § 1983 - DEFENDANT MARTIN AND DEFENDANT CITY

62. Plaintiffs re-allege and incorporate by reference all of the above paragraphs.

63. At all times relevant, Defendant Martin was acting under color of law and was an agent and employee of Defendant City.

64. Defendant Martin and Defendant City deprived Plaintiffs of their rights,

privileges and immunities guaranteed by the Constitution of the United States by and including but not limited to:

  a. Entering into the curtilage and/or other private and protected areas of Plaintiffs' property without a warrant and/or in the absence of exigent circumstances to justify the intrusion.

  b. Harassing and abusing Plaintiff Shana Mangold into signing a consent judgment in connection with the collection of a debt.

  c. Engaging in outrageous conduct that shocks the conscience by repeatedly banging on the door in violent fashion and threatening to get his badge and gun after Plaintiff Kris Mangold shut the door and made it clear that he wished to communicate with Defendant Martin no further.

  d. Abusing Defendant Martin's power as chief of police by harassing and continuously knocking on the door intimidating and scaring the Plaintiffs.

  e. Violating Plaintiffs' right to enjoy their property by harassing and intimidating Plaintiffs on their property.

65.  Upon information and belief, Defendant City has received previous complaints about the conduct of Defendant Martin and/or other officers of the Center Police Department regarding, among other things, their harassing and abusive behavior and abuse of power, or in the exercise of due diligence should have perceived that Defendant Martin and/or other officers of the Center Police Department had conduct and disciplinary problems that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiffs.

66.  Despite having knowledge of such complaints, Defendant City did nothing to discipline Defendant Martin and/or other officers of the Center Police Department for such conduct, thus evidencing an unwritten policy on the part of the City of Center tacitly authorizing

conduct that was in violation of its citizens' constitutional and statutory rights as guaranteed by the United States Constitution, federal law, and Missouri law.

67. Nor did Defendant City, upon noticing a pattern and practice of such conduct among its police officers, do anything to institute new and/or additional training programs for such officers in the performance of their duties.

68. Defendant City's failure to implement new or additional programs of the type described above, in light of their knowledge of the pattern and practice of its officers, rendered whatever training programs it had in place, if any, constitutionally deficient.

69. Defendant City's failure to implement effective training programs and its failure to discipline its police officers amounts to deliberate indifference and conscious disregard of its citizens' rights guaranteed by the Constitution of the United States, federal law, and the laws of Missouri.

70. As a direct and proximate result of Defendant Martin's and Defendant City's actions and failures, Plaintiffs have suffered injuries and damages, including, but not limited to fear, anxiety, apprehension, worry, frustration, and consternation.

71. The acts of Defendant Martin and Defendant City were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiffs, thus entitling them to an award of punitive damages against Defendant Martin and Defendant City.

72. As a result of both of Defendants' unlawful actions and infringements of their protected rights, Plaintiffs have been compelled to retain counsel in this matter and are therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendant Martin and Defendant City under 42 U.S.C. §§ 1983 and 1988 and award Plaintiffs

compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which Plaintiffs are entitled and this Court may deem just and proper.

          Respectfully submitted,

          **VOYTAS LAW, LLC**

By: /s/ Richard A. Voytas, Jr.
     Richard A. Voytas, Jr., #52046
     7312 S. Lindbergh Blvd. Suite 101
     St. Louis, MO 63125
     Phone: (314) 380-3116
     Email: rick@voytaslaw.com

*Attorney for Plaintiff*